# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| ANSYS, INC.,<br><br>    Plaintiff,<br><br><br>V.<br><br><br>STRAND ASSOCIATES, INC.,<br>and DOES 1 THROUGH 10.<br><br>    Defendants. | CIVIL ACTION NO. 3:21-cv-00760 |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, Ansys, Inc. ("Ansys"), brings this action against Defendants Strand Associates, Inc. ("SAI") and Does 1 through 10 (collectively "Defendants"), for copyright infringement in violation of 17 U.S.C. § 101 *et seq.*, and violation of the Digital Millennium Copyright Act's ("DMCA") anti-circumvention prohibitions in 17 U.S.C. §§ 1201 and 1203. Ansys seeks relief including injunction, monetary damages, and attorney's fees under 17 U.S.C. §§ 106, 501, 502, 504, and 505, and 17 U.S.C. §§ 1201 and 1203, and alleges as follows:

## THE PARTIES

1.      Ansys is a corporation with a principal place of business located at Southpointe, 2600 Ansys Drive, Canonsburg, Pennsylvania 15317.

2.      Ansys is the owner of copyright registrations for its Ansys Fluent modular suite of software programs.

3.      On information and belief, SAI is a Wisconsin domestic business corporation, with a principle place of business located at 910 West Wingra Drive, Madison, Wisconsin 53715. Corporate filings

1

with the Wisconsin Secretary of State identify SAI as a Wisconsin corporation with a principal place of business of 910 West Wingra Drive, Madison, Wisconsin 53715.

4.      Ansys is unaware of the true names and capacities of Does 1 through 10, and therefore sues these defendants by such fictitious names. Ansys will ask leave of Court to amend this Complaint to state the true names and capacities of the defendants sued as Does when ascertained. Ansys is informed and believes and thereby alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged in this Complaint, and that Ansys' damages were proximately caused by their conduct.

5.      Ansys is informed and believes, and on that basis alleges, that at all relevant times each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego, relationship and/or employment, and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged with full knowledge of each and every violation of Ansys' rights and the resulting damages proximately caused to Ansys.

## JURISDICTION AND VENUE

6.      This Court has original and exclusive jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court may properly exercise personal jurisdiction over the Defendants because each defendant is either a corporation that conducts business in this District or is an individual who has sufficient minimum contacts with this District to satisfy traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and/or § 1400(a) because SAI maintains its principal place of business in this district and because a substantial part of the events giving rise to Ansys' claims occurred in this district.

## THE ASSERTED COPYRIGHTS

9.      Ansys owns U.S. Copyright Registration No. TX 8-268-167, registered on November 17, 2016 to SAS IP, Inc. (which merged into Ansys, Inc. on January 20, 2017) and titled "ANSYS Fluent Release 13."

10.     Ansys owns U.S. Copyright Registration No. TX 8-714-692, registered on April 29, 2019 to Ansys, Inc. and titled "ANSYS 14.5 (including Aqwa-Wave, CAD Configuration Manager, CFD-Post, CFX, Display, EKM Desktop, EKM Studio, Fluent, ICEM CFD, Icepak, Mechanical, APDL, Polyflow, TurboGrid, Workbench)."

11.     Ansys owns U.S. Copyright Registration No. TX 8-780-315, registered on August 19, 2019 to Ansys, Inc. and titled "ANSYS 15.0 (including Aqwa-Wave, CAD Configuration Manager, CFD-Post, CFX, Display, EKM Desktop, EKM Studio, Fluent, ICEM CFD, Icepak, Mechanical APDL, Polyflow, TurboGrid, Workbench)."

12.     Ansys owns U.S. Copyright Registration No. TX- 8-924-690, registered on October 11, 2019 to Ansys, Inc. and titled "ANSYS 19.2 (including ACP, AIM, AQL, ARC, Aqwa, Aqwa-Wave, CAD Configuration Manager, CFD-Post, CFX, Chemkin, Display, EKM Desktop, EKM Studio, Energico, EnSight, EnVe, EnVideo, EnVision, FENSAP-ICE, Fluent, Forte, ICEM CFD, Icepak, Mechanical APDL, Model Fuel Library, Polyflow, Reaction Viewer, Reaction Workbench, RSM, SCDM, TurboGrid, Viewer, Workbench)."

## BACKGROUND FACTS

13.     Ansys is a global leader in engineering simulation software. With its portfolio of engineering simulation software, Ansys helps its customers solve complex design challenges and engineer products. Ansys provides services in a wide range of industries, including the Aerospace and Defense, Automotive, Construction, Consumer Goods and Energy industries.

14.     One of Ansys' flagship products is the Ansys Fluent modular suite of software programs (hereinafter the "Ansys Software"), which is protected by the U.S. copyright registrations identified in Paragraphs 9 through 12 above.

15.     Ansys Software contains broad, physical modeling capabilities needed to model flow, turbulence, heat transfer and reactions for industrial applications.  Ansys Software spans an expansive range, including special models, with capabilities to model in-cylinder combustion, aero-acoustics, turbomachinery, and multiphase systems.

16.     Ansys regularly improves, updates, and adds features when it releases new versions of its Ansys Software.

17.     Ansys licenses its highly valuable Ansys Software to its customers. Customers may purchase single user licenses or multi-user licenses. In either case, the number of simultaneous users or end-users may not exceed the number of licenses purchased. Ansys prevents unauthorized access of the Ansys Software through the use of a Security Mechanism. Ansys' license agreement, which all users (including illegal users) see on their computer screens and to which all users (including illegal users) must agree to use the Ansys Software, states that customers are not allowed to use the Ansys Software without the Security Mechanism, and that the Ansys Software can detect the installation or use of illegal copies of the Ansys Software and collect and transmit data about those illegal copies.

18.     Piracy of software occurs when users access software for which they have not purchased a valid license. The ease of digital replication of software lends itself to illegal copying of software, where users may make multiple copies of a software program, and then distribute the copies to users who have not made a legal purchase of the software (i.e., either distributing the software for free, or selling the copies of the software at deeply discounted prices).

19.     In an effort to reduce the use of illegally copied software, software providers, including Ansys, implement license verification technology such that their software will not function unless the user has legally purchased a license. The license verification technology may be a software mechanism or a

4

physical mechanism attached to a single computer. The license verification technology may be in the form of a key (i.e., a series of numbers and letters) that a user types in during the software installation process, or a hardware device, where the software will only operate correctly when the hardware device is attached to the computer executing the software. The license verification technology is provided by the software provider to the buyer when the software is purchased legally. Users who have not made a legitimate purchase of the software will not have access to the key or hardware device provided by the software provider, and therefore the software will not function properly. Ansys provides license verification technology as a component of the above-mentioned Security Mechanism.

20.     Software hackers reverse engineer the Security Mechanism and then provide processes and utilities to bypass the license verification technology thus allowing unauthorized use of the software. The hackers' processes and utilities mimic the license verification technology (e.g., keys, hardware devices, etc.) as an illicit means to allow pirated software to function as fully as legally purchased software. Software utilities that mimic the license verification technology are often referred to as "cracked" licenses. Software hackers may also create hacked versions of the software such that a license is not needed during installation.

21.     Sophisticated websites exist where illegally obtained software, the software utilities that mimic the license verification technology, and hacked versions of the software may be downloaded and installed by those who do not want to pay for properly licensed software. Each hacked version of the software represents a lost sale and/or license for the company that owns the software, and for resellers of the software (who may provide hardware installation and support, and software configuration, customization, and maintenance). A study by the Business Software Alliance reported that properly licensed software has a positive impact on national economic activity that is more than three times the impact of pirated software.[1]

22.     Software that has been hacked or modified to use a cracked license may also contain malware that can damage computer systems, and/or infiltrate the computer network and the data on that network. In a study conducted by the Technology Policy Institute, the more users visited piracy sites, the more often their

---

[1] https://www.bsa.org/files/reports/2013softwarevaluestudy_en.pdf

machines were infected with malware.[2] Software that has been hacked may also not operate properly, negatively impacting the reputation of the software company that now has no oversight or control over the quality of the hacked versions of its software in use, or the products produced by that software.

23.     Piracy Detection and Reporting Security Software ("PDRSS") exists to identify instances of pirated software in use and provides the identity and location of organizations utilizing the pirated software to the software providers. Identification of pirated software allows the software providers to take legal action against intentional software piracy, notify unwitting organizations of the illegal use of the software (and the potential malware problems that can accompany pirated software), and sell valid software licenses in the place of the previously illegally obtained software programs to recoup lost sales. Ansys identifies instances of pirated software in use through PDRSS which, along with the license verification technology, is a component of the Security Mechanism.

24.     PDRSS providers also identify the means by which software hackers have thwarted the license verification technology (i.e., the abovementioned cracked license) for a particular software program. For example, PDRSS providers may accomplish this by downloading pirated software from the above-mentioned websites and determining how the software hackers were able to bypass the license verification technology. Once the software hackers' methods are identified, the PDRSS providers then work with software providers, such as Ansys, to map out a plan for determining when pirated software is in use. This includes identifying when the pirated software is using a cracked license.

25.     The plan may include a variety of forms for identifying software piracy. The plan may also include defining software use patterns that are indicative of software piracy. PDRSS providers work with software providers to determine various patterns that are indicative of pirated software use, and thresholds at which the PDRSS software should begin to gather and report data on the computer using the pirated software. For example, it is common for a potential customer to test out a software program for a short period of time before deciding to purchase the software package legally. However, an organization that continues to use

---

[2] https://techpolicyinstitute.org/publications/privacy-and-security/piracy-and-malware-theres-no-free-lunch

illegally downloaded software for an extended period (i.e., beyond a reasonable test period as defined by the software provider) has breached the threshold of a trial period. Another threshold might be the detection of a cracked license, which is an indication of an anomaly within the software, or other suspicious patterns of use of the software.

26.     Software providers, such as Ansys, embed the PDRSS (according to the plan tailored specifically for that software provider) within their software, validate that the patterns and thresholds will trigger on pirated software (and will not trigger on validly purchased software), and then release the software.

27.     The serial number of the license is a unique identifier and helps in identifying unauthorized versions of the software. Multiple versions of software using the same serial number are indicative of unauthorized versions of software using a cracked license. In some cases, illegal license generators create license files having serial numbers that are inconsistent with the serial numbers generated by the software providers, which is also indicative of a cracked license.

28.     The IP (Internet Protocol) address is a unique address used to identify computers on the global network of the internet.  An IP address is the numerical sequence by which a computer on the public internet can identify another computer on the public internet.  IP addresses are in the form **xxx.xxx.xxx.xxx** where each xxx must be a number between 0-255.

29.     The identifying name of a computer is typically a name an organization gives to each computer in the organization for easy identification within the organization. For example, identifying computer names Computer_Lab_l and Computer_Lab_2 are easy to remember and help employees within the organization easily reference particular computers, rather than, for example, referring to computers by a serial number associated with the computer hardware.

30.     A Media Access Control ("MAC") address is a unique hardware identifier assigned to network interfaces.  Every device that makes a physical connection to the network, whether it is an Ethernet card or port or wireless connection has a unique and specific address.  Thus, a computer with both an Ethernet connection and a wireless connection has two unique MAC addresses. A MAC address is a series of numbers

and letters.  When a network device is manufactured, it is assigned a MAC address at the factory.  The first six digits of a MAC address represent the device manufacturer, which can be looked up on the Internet.

31.     Data reported from the embedded PDRSS includes a variety of information to identify the software that has been pirated and the organizations utilizing the pirated software, such as the version of the software being used, the license serial number, the IP address of the organization where the pirated software is running, the identifying name of the computer, and a MAC address. Through the Security Mechanism, Ansys collects this identifying information to determine when pirated and unlicensed versions of its Ansys Software are being utilized.

32.     Software providers may track their own reporting data or may use third party providers to track the reporting data.  Once pirated copies of software are identified, software providers can notify the organizations using the software, and request that they purchase valid licensed copies of the software instead of using the pirated software.

33.     Ansys collects a large volume of data through use of PDRSS that must be reviewed, analyzed, and investigated to determine and confirm the source of infringement. Through review, analysis, and investigation of the PDRSS data, Ansys discovered that Defendants used unlicensed and pirated Ansys Software.

34.     Defendant SAI is a Wisconsin corporation and, according to its website, is a multidisciplinary engineering firm with 10 offices across the United States.

35.     On information and belief, SAI, through the actions of one or more SAI's employees working for the benefit of SAI and within the course and scope of their employment at SAI, installed, accessed, and used pirated versions of the Ansys Software without authorization.

36.     Through Ansys' use of PDRSS, Ansys has detected at least 12 instances of unauthorized access of the Ansys Software by Defendants on at least three computers between May 9, 2019 through November 24, 2019.  Because the PDRSS does not necessarily detect all unauthorized use of the Ansys Software, there may be additional unauthorized uses by Defendants.

8

37.     On information and belief, in addition to illegally downloading and using the Ansys Software, Defendants illegally downloaded and used Ansys' High Performance Computing (HPC) Pack software, which is used to enhance the capabilities of Ansys Software and for which Ansys charges its legitimate customers separate and additional licensing fees.

38.     Pirated versions of the Ansys Software cannot be downloaded and installed accidently or innocently. Rather, downloading and installing pirated Ansys Software is a multi-step process that requires willful and deliberate action to circumvent the PDRSS and other components of the Security Mechanism that are put in place to deter and detect such conduct.

39.     In at least one instance, the infringement was connected to the email "doug.huttes@strand.com."

40.     On information and belief, SAI owns the email domain name "strand.com," and its employees conduct business on behalf of SAI using the "strand.com" email domain.

41.     On information and belief, as the employer of Mr. Huttes, SAI has the right and ability to supervise or control Mr. Huttes, and is responsible for supervising his use of hardware and software products, including the Ansys Fluent Software.

42.     Upon information and belief, Mr. Huttes was using the pirated Ansys Fluent software for commercial purposes on behalf of and for the benefit of SAI.

43.     On August 18, 2020, Ansys made initial contact with Matthew Richards, Chief Executive Officer of SAI, to discuss the infringement of the Ansys Software, and to discuss a resolution for the unlicensed, pirated use of the software.

44.     On September 11, 2020, SAI wrote to Ansys noting that the unlicensed use may be attributed to an employee, who Ansys later identified as Mr. Douglas Huttes.

45.     Thereafter, Ansys sent another letter to Joseph Bunker and Matthew Richards on September 15, 2020 noting SAI's liability.

46.     On September 28, 2020, SAI's outside counsel sent a letter to Ansys disputing the unlicensed, pirated use of the Ansys Software.

47.     Ansys provided further data evidencing the unlicensed, pirated use of Ansys Software to SAI on October 6, 2020.

48.     Ansys and SAI had further discussions regarding SAI's unlicensed, pirated use of the Ansys Software, however these discussions did not result in any resolution.

49.     Upon information and belief, Defendants continue to derive benefit from data generated from use of the Ansys Software.

50.     As a direct and proximate result of Defendants' acts of infringement, Ansys has suffered damages and will continue to suffer damages through loss of substantial licensing revenue, and diminishment of the exclusivity, inherent value, and marketability of the Ansys Software.

51.     As a direct and proximate result of Defendants' acts of infringement, Ansys has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law.

## COUNT ONE
### Infringement of ANSYS Software Registration Number TX 8-268-167 ("ANSYS 167") by Defendants, 17 U.S.C. §§ 106 and 501

52.     Ansys incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth here.

53.     Defendants have knowingly and intentionally infringed, and continue to infringe ANSYS 167, and will continue to do so unless enjoined by this Court.

54.     As a direct and proximate consequence of Defendants' infringing acts, Ansys has suffered and will continue to suffer injury and damages, including loss of substantial licensing revenue and diminishment of the exclusivity, inherent value, and marketability of the Ansys Software. Unless such acts and practices are enjoined by the Court, Ansys will continue to be injured in its business and property rights, and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Ansys is entitled to relief.

55.     Upon information and belief, Strand's infringement is knowing, intentional and willful.

## COUNT TWO
### Infringement of ANSYS Software Registration Number TX 8-714-692 ("ANSYS 692") by Defendants, 17 U.S.C. §§ 106 and 501

56.     Ansys incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth here.

57.     Defendants have knowingly and intentionally infringed, and continue to infringe ANSYS 692, and will continue to do so unless enjoined by this Court.

58.     As a direct and proximate consequence of Defendants' infringing acts, Ansys has suffered and will continue to suffer injury and damages, including loss of substantial licensing revenue and diminishment of the exclusivity, inherent value, and marketability of the Ansys Software. Unless such acts and practices are enjoined by the Court, Ansys will continue to be injured in its business and property rights, and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Ansys is entitled to relief.

59.     Upon information and belief, Strand's infringement is knowing, intentional and willful.

## COUNT THREE
### Infringement of ANSYS Software Registration Number TX 8-780-315 ("ANSYS 315") by Defendants, 17 U.S.C. §§ 106 and 501

60.     Ansys incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth here.

61.     Defendants have knowingly and intentionally infringed, and continue to infringe ANSYS 315, and will continue to do so unless enjoined by this Court.

62.     As a direct and proximate consequence of Defendants' infringing acts, Ansys has suffered and will continue to suffer injury and damages, including loss of substantial licensing revenue and diminishment of the exclusivity, inherent value, and marketability of the Ansys Software. Unless such acts and practices are enjoined by the Court, Ansys will continue to be injured in its business and property rights,

and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Ansys is entitled to relief.

63.     Upon information and belief, Strand's infringement is knowing, intentional and willful.

## COUNT FOUR

**Infringement of ANSYS Software Registration Number TX- 8-924-690 ("ANSYS 690") by Defendants, 17 U.S.C. §§ 106 and 501**

64.     Ansys incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth here.

65.     Defendants have knowingly and intentionally infringed, and continue to infringe ANSYS 690, and will continue to do so unless enjoined by this Court.

66.     As a direct and proximate consequence of Defendants' infringing acts, Ansys has suffered and will continue to suffer injury and damages, including loss of substantial licensing revenue and diminishment of the exclusivity, inherent value, and marketability of the Ansys Software. Unless such acts and practices are enjoined by the Court, Ansys will continue to be injured in its business and property rights, and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Ansys is entitled to relief.

67.     Upon information and belief, Strand's infringement is knowing, intentional and willful.

## COUNT FIVE

**Unlawful Circumvention Under the Digital Millennium Copyright Act ("DMCA") by Defendants, 17 U.S.C. §§ 1201 and 1203**

68.     Ansys incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth here.

69.     Ansys uses a Security Mechanism to control access to and copying of its Ansys Software, and to prevent unauthorized access and unauthorized copying.

70.     On information and belief, Defendants defeated the Security Mechanism, which has allowed Defendants to access and copy the valuable Ansys Software without authorization.

71.     Defendants' conduct has caused, and unless enjoined will continue to cause, irreparable harm to Ansys, for example through loss of substantial licensing revenue and diminishment of the exclusivity, inherent value, and marketability of the Ansys Software.

72.     Accordingly, Defendants have violated 17 U.S.C. § 1201 and this violation is willful.

73.     As a result of Defendants' unlawful circumvention, Ansys is entitled to actual damages and any additional profits of Defendants pursuant to 17 U.S.C. § 1203(c)(2) or statutory damages pursuant to 17 U.S.C. §1203(c)(3).

74.     Ansys is entitled to costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 1203(b).

WHEREFORE, Plaintiff, Ansys, Inc., respectfully requests that this Court enter judgment in its favor and against Defendants and requests relief as follows:

A.     Judgment be entered in Ansys' favor and against Defendants on each count of the Complaint;

B.     Declaring that Defendants have infringed the Ansys Software and copyrights;

C.     Declaring that the foregoing infringement was willful and knowing;

D.     Entry of a preliminary and thereafter permanent injunction prohibiting the Defendants, and their agents, servants and employees, and all persons acting in concert with, or for them from continuing to reproduce, distribute, display, disseminate, transmit, make available for download, or otherwise use the Ansys Software in any manner whatsoever appropriating or in violation of Ansys' copyrights;

E.     Declaring that Defendants have engaged in unlawful circumvention of copyright Security Measures in violation of the DMCA;

F.     Entry of a preliminary and thereafter permanent injunction prohibiting the Defendants and their agents, servants and employees, and all persons acting in concert with, or for them from any further unlawful circumvention of Ansys' Security Measures;

G.     Award Ansys its actual damages and Defendants' additional profits in an amount to be determined at trial;

13

H.      Award Ansys statutory and other damages as provided under the Copyright Act and the DMCA;

I.      Award Ansys prejudgment interest;

J.      Award Ansys its costs, attorney's fees, and expenses arising from this suit; and

K.      Grant Ansys such other relief as this Court deems just and proper.

## JURY DEMAND

Ansys demands a trial by jury on all counts of its Complaint so triable.

Dated:  December 1, 2021                K&L GATES LLP

                                        */s/  Eric W. Lee*
                                        John J. Cotter [SBN 554524]
                                        john.cotter@klgates.com
                                        Eric W. Lee [SBN 688980]
                                        eric.lee@klgates.com
                                        K&L Gates LLP
                                        One Lincoln Street
                                        Boston, MA 02111
                                        Tel:  (617) 261-3100
                                        Fax:  (617) 261-3175

                                        *Attorneys for Plaintiff Ansys, Inc.*